M. Gregory Oczkus
Greg Oczkus Law Office
430 W 7th Ave., Suite 202
Anchorage, Alaska. 99501
Telephone: (907) 276-6506
Facsimile: (907) 258-6902



RECEIVED
MAR 1 0 2006
CLERK U.S. DISTRICT COURT
ANCHORAGE ALASKA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STRAND HUNT CONSTRUCTION, INC., a Washington Corporation,<br><br>Plaintiff,<br><br>v<br><br>DIX MASONRY, INC., an Alaskan corporation; DEBRA R. DIX; AND DENNIS R. DIX,<br><br>Defendant. | Case No. A05-156 CIV<br><br>**ANSWER AND COUNTERCLAIM OF MASONRY, INC.** |

COME NOW the defendants, Dix Masonry, Inc., Debra R. Dix and Dennis R. Dix, by and through counsel, and for their Answer and Counterclaim allege:

1. Admit.

2. Admit.

3. Admit.

4. Admit.

5. Admit, but Debra R. Dix and Dennis Dix were divorced in 2005.

6. Admit, but Debra R. Dix and Dennis Dix were divorced in 2005.

## Jurisdiction and Venue

7. Admit.

8. Admit.

## Statement of Facts

9. Admit.

10. Admit, the parties entered into a subcontract.

11. Deny.

12. Admit.

13. Deny.

14. Deny. Any personal problems of Dennis Dix had nothing to do with the Project.

15. Deny.

16. Deny. The letters are the best evidence of the statements.

17. Deny.

18. Admit that some suppliers were not timely paid, but the reason was because Strand Hunt refused to pay monies owed to its subcontractor, Dix Masonry, Inc.

19. Defendants are without sufficient knowledge, information or belief to form an opinion as to the allegations contained in Paragraph #20 of the

Complaint and therefore deny same.

20. Defendants are without sufficient knowledge, information or belief to form an opinion as to the allegations contained in Paragraph #20 of the Complaint and therefore deny same.

21. Defendants are without sufficient knowledge, information or belief to form an opinion as to the allegations contained in Paragraph #21 of the Complaint and therefore deny same.

22. Deny.

## First Cause of Action

23. Defendants reallege and incorporate the answers to the allegations in Paragraphs 1 through 22 as though set forth herein.

24. Deny.

25. Deny.

## Second Cause of Action

26. Defendants reallege and incorporate the answers to the allegations contained in Paragraphs 1 through 25 as though set forth herein.

27. Admit that Dix Masonry, Inc. has a claim against Strand Hunt, the exact amount which will be proven at trial.

28. The contents of Paragraph #28 are not factual allegations and are thus denied.

### Third Cause of Action

29. Defendants reallege and incorporate the allegations in Paragraphs 1 through 28 as though set forth herein.

30. Deny.

31. Admit.

32. Admit.

33. Deny.

34. Deny.

35. Deny.

### Fourth Cause of Action

36. Defendants reallege and incorporate the allegations in Paragraphs 1 through 35 as though set forth herein.

37. Deny.

38. Admit.

39. Deny.

40. Deny.

41. Deny.

42. Deny.

**Affirmative Defenses**

1. On information and belief, the delay in construction was caused by Strand Hunt. The structure could not be closed in and heated prior to winter. The subzero temperatures may have resulted in movement of the structure which would be the cause of any cracks needing repairs.

2. On information and belief, Strand Hunt will assert claims against Dix Masonry, Inc. which are not correct and which were in fact an effort to invoice the United States Government for unneeded work on the project, or to bill Dix Masonry, Inc. insurance.

3. Strand Hunt is attempting to invoice Dix Masonry for work which Strand Hunt employees incorrectly performed.

4. Strand Hunt Construction finished the project with former Dix Masonry, Inc. employees who will testify that the work performed by such employees at the direction and supervision of Strand Hunt was performed at -20° to -40°F temperatures.

5. Debra Dix did not act recklessly and is not liable to Strand Hunt for any damages.

6. Strand Hunt Construction job performance had been criticized by the United States Government before this project. Strand Hunt has had problems with their projects in Alaska. The adverse evaluation has nothing to do with Dix Masonry, Inc.

7. Strand Hunt failed to properly design and provide skilled supervision on the project which is the proximate cause of any problems related to this project.

8. The personal problems of Dennis Dix did not cause any problems with The Project.

9. There is no defective work or construction completed by Dix Masonry, Inc.

10. Strand Hunt scheduled Dix Masonry, Inc. to have the concrete work completed in 37 days, excluding Sundays. Problems with the design build and the numerous design changes extended concrete work on the job from June 1, 2004 until the last week of December, 2004. Dix Masonry, Inc. had employees on the project, and was paying expenses and bills related to the project, even though Strand Hunt's last payment to Dix Masonry was on September 10, 2004.

11. The Complaint fails to state a claim upon which relief can be granted.

12. Defendants reserve the right to assert further defenses as discovery proceeds.

13. Strand Hunt has a schedule of outstanding Dix Masonry vendors who need to be paid. Any payment of their claims should be an offset to Strand Hunt.

## Counterclaim

COMES NOW Dix Masonry, Inc., and for its counterclaim alleges.

1. In 2004 Dix Masonry, Inc. Dix was a general contractor registered and licensed with the State of Alaska, Department of Occupational Licensing.

2. Dix Masonry, Inc. is a corporation formed under the laws of the State of Alaska and is qualified to bring this action and counterclaim.

3. Strand Hunt Construction (SHC) is a corporation formed in the State of Washington and does business in Alaska.

4. This action and counterclaim relates to design build construction of the Joint Security Forces Complex located on Eilesen AFB, Alaska.

5. The project contract is identified by Contract NO. W911KB-04-0008 (The Project).

6. On or about January, 2004 Strand Hunt contacted Dix Masonry, Inc. (**Dix**) and solicited **Dix** to be the subcontractor to do concrete and masonry work on The Project.

7. Dix Masonry, Inc. has successfully completed numerous projects for the U.S. Army Corps of Engineers on the military bases over the past 12 years,

including but not limited to 801 Housing Project at Eielsen AFB, Vehicle Maintenance Facility on Ft. Wainwright, Munitions Facility at Eielsen AFB and the Whole Barracks Renewal at Eielsen AFB.

8. The United States government was soliciting proposals for a design build facility. Design build means that the contractor supplies all engineering, architectural and construction services to the owner (U.S. Government).

9. Strand Hunt was working with an architectural firm known as Design Alaska. Strand Hunt was utilizing the engineering services of Design Alaska.

10. Strand Hunt initially represented to **Dix** that the project would be awarded March 1, 2004, with the building to be 100% closed by September 28, 2004.

11. From January 2004 until May 2004 Dix Masonry, Inc. supplied information and bid proposals to Strand Hunt Construction and its engineers and architects.

12. Dix Masonry, Inc. signed a subcontractor agreement with Strand Hunt. **Dix** agreed to supply and install CMU block for $395,000 and perform the concrete work for $100,000. The contract also included unit price options which SHC elected to utilize.

13. Strand Hunt Construction was responsible for surveying, grade leveling, trenching for footings, leveling and preparation of surface for all phases of concrete work, and installation of the utilities located under the concrete slabs.

14. Attached hereto as Exhibit A is a true and correct copy of the construction schedule which was delivered by Strand Hunt to **Dix**.

15. The master agreement between United States Army Corps of Engineers and Strand Hunt Construction provides:

> "Contractor requires ACO or CEO approval of all aspects of the design prior to beginning of construction. Fast track portions of the design shall be identified early and approved prior to beginning of that part of the work. The contractor should anticipate a review period, not to exceed 14 working days, called of the 100% Design submitted before Government approval for construction to proceed. The final construction schedule shall be submitted for approval after ACU CEO notify contractor that the 100% Design submittal is cleared for construction."

16. On or about April 15, 2004 Strand Hunt supplied Dix Masonry, Inc. information which it represented to be 65% Design Drawings and Specs for the project.

17. On or about July 1, 2004 Strand Hunt supplied to **Dix** which it represented to be 100% Civil, Structural and 95% Architectural, Mechanical and Electrical Drawings and Specs for the project.

18. These documents were supplied on two separate computer discs.

19. In fact, the drawings and project specifications were substantially incomplete, inaccurate, subject to change and less than 2/3 complete.

20. At the request of Strand Hunt, Dix Masonry, Inc. delayed moving onto the project several times.

21. Strand Hunt first required Dix Masonry, Inc. to man the project and provide labor ready to begin construction on May 24, 2004.

**Breach of Contract**

22. Dix realleges the allegations contained in Paragraphs 1 through 21 as if fully set forth herein.

23. Strand Hunt breached its agreement with Dix Masonry, Inc. in numerous ways:

    a.    Failed to supply water to the project as promised. Water is critical for the concrete work and CMU installation to be done efficiently and correctly.

    b.    Failed to timely prepare the job site so that Dix Masonry, Inc. crews could build forms and lay rebar and wire mesh in preparation for the concrete pours.

    c.    Failed to have the surveyor on-site as needed to address

        numerous changes in the design.

   d.    Failed to supply steel needed for the project in a timely manner.

   e.    Proceeded with the project before the drawings and specifications were 100% complete and approved by the U.S. Army Corps of Engineers.

   f.    Failed to properly design the structure to promptly order steel for the project.

   g.    Unilaterally and repeatedly changed start dates or schedules for the project from the construction schedule originally provided.

   h.    Initially prepared the site three inches too low which delayed the start of construction.

   i.    Insisted that Dix employees be on the project by the first week of June to begin construction.

   j.    Failed to provide supervision experienced in similar projects as per the prime contract agreement.

   k.    Failed to have representation on site for the other trades involved.

24. These breaches of the contract have caused damages to Dix Masonry, Inc. in excess of $75,000, the exact amount to be proven at trial.

**Fraudulent Concealment and Misrepresentation**

25. Dix Masonry, Inc. realleges the allegations of Paragraphs 1 through 24 as if fully set for herein.

26. Strand Hunt represented to Dix Masonry, Inc. that prior to the start of work by Dix the designs and specifications for the project would be 100% complete and approved by the owner as per the master agreement for the project.

27. Strand Hunt concealed and failed to disclose to Dix Masonry, Inc. that it had an ongoing design change regarding the utilidor tunnel to the building site, which design change dictated the finish grade for the new structure.

28. Strand Hunt was aware of mistakes of its engineers regarding the elevations of the building, which mistakes were not timely disclosed to Dix Masonry, Inc.

29. Strand Hunt failed to disclose that it had submitted design drawings which had not been approved by the government and failed to advise Dix Masonry, Inc. in a timely manner.

30. Strand Hunt intentionally concealed from Dix Masonry, Inc. that its subgrade electrical, mechanical and structural designs had not been completed prior to the time it required Dix Masonry, Inc. to sign the subcontract.

31. Strand Hunt directed Dix Masonry, Inc. to proceed with the project but concealed the fact that its subgrade, electrical, mechanical and structural design drawings had not yet been accepted Army Corps of Engineers, all of which is a precondition to Dix Masonry, Inc. being able to install reinforcing steel and wire mesh and make concrete pours.

32. Strand Hunt never disclosed to Dix Masonry, Inc. that it did not have steel package and structural designs submitted and approved by the Army Corps of Engineers before **Dix** started on the project.

33. Strand Hunt concealed that it was having problems with its engineering and architectural firm (Design Alaska) which was affecting the owner as was all subcontractors on the project.

34. Strand Hunt, through its owners and agents, represented to Dix Masonry, Inc. that Strand Hunt had an excellent reputation with United States Government, which was not true.

35. Dix Masonry reasonably relied on the representations made by Strand Hunt Construction and its agents and employees.

36. The misrepresentations and concealments by Strand Hunt Construction and/or its employees were both negligent and intentional.

37. Dix Masonry, Inc. reasonably believed that Strand Hunt would timely disclose important and critical information so that Dix could perform the contract in any efficient and workmanlike manner for the benefit of the owner.

38. The concealment and the misrepresentations by Strand Hunt Construction were material.

39. Strand Hunt Construction knew or should know now that based on its misrepresentations and based on its concealment of material facts that Dix Masonry, Inc. would be damaged.

40. Strand Hunt owed Dix Masonry, Inc. the duty to disclose important information and promptly correct inaccurate information.

41. SHC breached its duty to Dix Masonry, Inc.

42. Strand Hunt is vicariously liable for the conduct of its employees and agents.

43. Dix Masonry, Inc. is entitled to damages for deciet in excess of $75,000, the exact amount improved at trial.

### Punitive Damages

44. Dix Masonry, Inc. realleges the allegations in Paragraphs 1 through 43 as if fully set forth herein.

45. Strand Hunt is vicariously liable for the statements and conduct of its employees.

46. The fraudulent statements and actions of the employees were made within the course and scope of their employment with Strand Hunt.

47. The conduct of Strand Hunt Construction and its employees of intentionally concealing material facts and intentionally misrepresenting material facts entitle Dix Masonry, Inc. to punitive damages.

WHEREFORE defendants pray:

1. That the complaint be dismissed with plaintiffs to take nothing.

2. That Dix Masonry, Inc. have judgment against Strand Hunt Construction for breach of contract in excess of $75,000, the exact amount to be proven at trial.

3. That Dix Masonry, Inc. have judgment against Strand Hunt Construction for deceit and misrepresentation of contract in excess of $75,000, the exact amount to be proven at trial.

4. That Dix Masonry, Inc. have judgment against Strand Hunt Construction for punitive damages as may be awarded.

5. For costs, interest and attorney fees.

6. For such other relief as this court deems just and proper.

Dated: 3/10/06

GREG OCZKUS, LAW OFFICES

By: _____
M. Gregory Oczkus
Ak Bar #7710145

G:Dix/Docs/Answer